USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ________ ________ No. 97-1084 UNITED STATES OF AMERICA, Appellant, v. LUI KIN-HONG, a/k/a JERRY LUI, Appellee. _____ BEFORE BEFORE TORRUELLA, Chief Judge, TORRUELLA, Chief Judge, ___________ ALDRICH, Senior Circuit Judge, ALDRICH, Senior Circuit Judge, ____________________ SELYA, BOUDIN, STAHL*, and LYNCH, Circuit Judges, SELYA, BOUDIN, STAHL*, and LYNCH, Circuit Judges, ______________ ORDER OF EN BANC COURT ORDER OF EN BANC COURT Entered: April 17, 1997  Entered:  The suggestion for the holding of a rehearing en banc having been carefully considered by the judges of this Court in regular active service and a majority of said judges not having voted to order that the appeal be heard or reheard by the Court en banc, It is ordered that the suggestion for rehearing en banc be denied. By the Court: _______________________ William H. Ng, Clerk [cc: Messrs. Whiting, Good, Posner] __________________________ * Dissent follows. STAHL, Circuit Judge, (dissenting). Because I do STAHL, Circuit Judge, (dissenting). _____________ not believe that the panel's opinion reaches the correct result, and because I believe that this case raises numerous difficult and complex questions of law that warrant the full court's considered attention, I would grant the petition. I therefore respectfully dissent from the court's decision to deny rehearing en banc. I. The Treaty Language  I. The Treaty Language  The extradition request in this case was made by authorities of the British Crown Colony of Hong Kong pursuant to two bilateral treaties dating from 1972 -- a primary agreement and a supplemental treaty -- that both the United States and the United Kingdom have signed and ratified.1 The main treaty applies to Hong Kong by an exchange of diplomatic notes made in October 1976, see 28 U.S.T. at 238-41, while ___ the supplemental treaty by its terms applies to the United Kingdom and "the territories for whose international relations the United Kingdom is responsible," which, as  ____________________ 1See Extradition Treaty Between the Government of ___ the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, June 8, 1972, 28 U.S.T. 227 [hereinafter "the treaty"] and Supplemental ___ Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, June 25, 1985, T.I.A.S. No. 12050 [hereinafter "the supplemental treaty"].   -2- 2 listed in an annex, includes Hong Kong.2 In 1984, the United Kingdom and the People's Republic of China issued a Joint Declaration, which was ratified and entered into force in 1985, under which sovereignty over Hong Kong will revert to China on July 1, 1997.3 In 1985, the United States signed the supplemental treaty and the United States Senate ratified it the following year. Despite being ratified after the well- publicized Sino-British Joint Declaration regarding Hong Kong's future status, the supplemental treaty says nothing about fugitives sought for extradition ("relators") to Hong Kong, like Lui Kin-Hong, who can demonstrate that their trial will occur after Hong Kong's reversion to China. "In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning." United States v. Alvarez-Machain, 504 U.S. 655, _____________ _______________ 663 (1992) (citing Air France v. Saks, 470 U.S. 392, 397 __________ ____  ____________________ 2The supplemental treaty specifically applies to Great Britain and Northern Ireland, the Channel Islands, the Isle of Man, Anguilla, Bermuda, the British Indian Ocean Territory, the British Virgin Islands, the Cayman Islands, the Falkland Islands, the Falkland Island Dependencies, Gibraltar, Hong Kong, Montserrat, Pitcairn, Henderson, Ducie and Oeno Islands, St. Helena, the St. Helena Dependencies, the Sovereign Base Areas of Akrotiri and Dhekelia in the Island of Cyprus, Turks and Caicos Islands. See Art. 6 & ___ Annex.   3See Joint Declaration of the Government of the ___ United Kingdom of Great Britain and Northern Ireland and the Government of the People's Republic of China on the Question of Hong Kong, Dec. 19, 1984, 1984 Gr. Brit. T.S. No. 20 (Cmd. 9352) [hereinafter "the Joint Declaration"].  -3- 3 (1985); Valentine v. United States ex rel. Neidecker, 299 _________ _________________________________ U.S. 5, 11 (1936)). Article I of the primary US-UK bilateral extradition treaty provides that "[e]ach Contracting Party undertakes to extradite to the other" persons accused or convicted of certain enumerated offenses "subject to the conditions specified in this Treaty." Among the conditions that the treaty specifies are those found in Article XII, which incorporates a "specialty" provision, a common feature of extradition treaties,4 and contains a prohibition against a relator's re-extradition to stand trial in a third state. Article XII in relevant part provides: (1) A person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted, or on account of any other matters, nor be extradited by that Party to a third State --  (a) until after he has returned to the territory of the requested Party; or (b) until the expiration of thirty days after he has been free to return to the territory of the requested Party.  ____________________ 4See Kenneth E. Levitt, Note, International ___ _____________ Extradition, The Principle of Specialty, and Effective Treaty _____________________________________________________________ Enforcement, 76 Minn. L. Rev. 1017, 1022-24, 1027-28 (1992) ___________ ("The principle of specialty allows requesting states to try or punish defendants only for the offenses for which they were extradited. . . . Most United States extradition treaties currently in force, and all negotiated within the last one hundred years, incorporate the principle of specialty."). -4- 4 Lui's case raises the difficult question of the proper interpretation to be given to this Article of the extradition treaty and the specialty provision incorporated therein in the peculiar situation that the record reveals. The evidence shows and the government concedes that Lui will be tried in the court system of a sovereign other than that of the requesting Party and different than the one he would have been tried by but for the reversion of sovereignty over Hong Kong to China. As the district court found in granting habeas relief, the "uncontradicted evidence" establishes, as the government now concedes, that "[t]he reality . . . is that the Crown Colony of Hong Kong will not be able to try and to punish Lui by the time of reversion." Lui Kin-Hong v. ____________ United States, Civ. A. No. 96-104849-JLT, -- F. Supp. --, _____________ 1997 WL 37477, at *3 (D. Mass. January 7, 1997) (as corrected January 9, 1997).  The difficult question Lui's case presents is whether a certification of extraditability pursuant to the US-UK bilateral extradition treaty and 18 U.S.C. 3181, 3184 can issue in these circumstances. For the reasons that follow, I believe it cannot. On its face, Article XII of the treaty prohibits a requesting Party from trying and punishing the relator for crimes other than those for which he has been extradited. Moreover, it prohibits a requesting Party from extraditing -5- 5 the relator to a third-party sovereign. As I read Article XII, therefore, the fairest and most reasonable inference to be drawn from the treaty's language is that it allows only for extradition for offenses that will be tried and punished by the requesting sovereign. This is not the case we have before us. Thus, in my view, the district court correctly concluded that the most reasonable inference from Article XII's language is that the treaty "prohibits a person from being extradited to Hong Kong if Hong Kong, as a Crown Colony of the United Kingdom, is unable to try and to punish him." 1997 WL at *4. I believe that the logical inference to be drawn from the quoted treaty language is that Article XII requires the requesting Party to retain exclusive jurisdiction and custody over relators extradited to it by the requested Party. To me, the natural meaning of the language in Articles I and XII suggests that a "condition" to extradition under the treaty is that a relator is to be tried and punished in the courts and prisons of the Contracting Party requesting extradition. This requirement is subject solely to the exceptions provided for in subsections (1)(a) and (b), which do not apply here because the reality in this case is that Crown Colony authorities will neither return Lui to United States territory nor give him 30 days' freedom to leave Hong Kong prior to surrendering him to their Chinese successors, as those subsections would -6- 6 alternately require. On the facts revealed, therefore, I believe the district court correctly concluded that Lui cannot be certified for extradition because the United Kingdom fails to "live up to the terms of its extradition agreement with the United States." Id. at *4. ____ The purpose to be gleaned behind Article XII's words also supports the position that Lui cannot be certified for extradition in the current circumstances. This circuit has indicated that "[t]he existence of such [an extradition] treaty between the United States and another country indicates that, at least in a general sense, the executive and legislative branches consider the treaty partner's ______________________ justice system sufficiently fair to justify sending accused persons there for trial." In re Extradition of Howard, 996 ____________________________ F.2d 1320, 1329 (1st Cir. 1993) (emphasis added) (citing Glucksman v. Henkel, 221 U.S. 508, 512 (1911); Neely v. _________ ______ _____ Henkel (No. 1), 180 U.S. 109, 123 (1901)). ______________ In this particular instance, I agree with the district court that the US-UK bilateral treaties are "premised on the trust running between the United States and the United Kingdom." Lui, 1997 WL at *5. In my view, the ___ district court rightly noted that Article XII's language manifests an exchange of promises between our nation and a trusted treaty partner: "[t]he United Kingdom is promising that it, and only it, will try and will punish [relators -7- 7 like] Lui for specified crimes, and no others. By its adoption of the Treaty, the United States manifests its belief in that promise of the United Kingdom." Id. Because ___ the Crown Colony's extradition request in this case fails to live up to this promise by the United Kingdom, I believe that the district court properly concluded that a certification for Lui's extradition to Hong Kong cannot issue. As this court has recently explained, in extradition cases "[t]he requesting state must 'live up to whatever promises it made in order to obtain extradition.'" United States v. ______________ Saccoccia, 58 F.3d 754, 766 (1st Cir. 1995) (quoting United _________ ______ States v. Najohn, 785 F.2d 1420, 1422 (9th Cir.) (per ______ ______ curiam), cert. denied, 479 U.S. 1009 (1986)).5 _____ ______  ____________________ 5The panel opinion relies upon Saccoccia, a case _________ that involved the interpretation of an extradition treaty between the United States and Switzerland, to argue that federal extradition procedures do not give judicial officers the discretion to refuse the issuance of certificates of extraditability "on the ground that a treaty partner cannot assure the requested country that rights under a treaty will be enforced or protected." Slip op. at 29 (citing Saccoccia, _________ 58 F.3d at 766-67). My research fails to find support for the proposition for which the panel cites Saccoccia. On my _________ reading, Saccoccia indicates that Article XII's "specialty" _________ provision does not require an exact mirror-image between the precise indictment that prompts an extradition and the subsequent prosecution. See 58 F.3d at 766-67. Because that ___ is not the problem that I believe to be fatal to the extradition request in Lui's case, and as I indicate in the main body of my dissent, I believe that Saccoccia is properly _________ read, if at all, to support an interpretation of Article XII that would preclude the issuance of a certificate of extraditability in the unique circumstances present here. -8- 8 In arriving at my conclusion I am mindful of the Supreme Court's seminal extradition decision in Terlinden v. _________ Ames, 184 U.S. 270, 289 (1902). In Terlinden, the Court ____ _________ explained that a state requesting a relator's extradition must be "competent to try and to punish him." Id. at 289. ___ The Terlinden Court was asked to determine whether the German _________ Empire could successfully request a relator's extradition on the basis of a treaty between the United States and the Kingdom of Prussia, where the two sovereigns, King and Emperor, were one and the same. See id. at 284. The Court ___ ___ concluded that the Kingdom of Prussia, although part of the subsequently formed German Empire, continued to enjoy "its identity as such," and treaties that it had entered could still be performed "either in the name of its King or that of the Emperor." Id. at 285. In making its determination, the ___ Court explained that "the question whether power remains in a foreign State to carry out its treaty obligations is in its nature political and not judicial, and that the courts ought not to interfere with the conclusions of the political department in that regard." Id. at 288.  ___ The situation in Terlinden, however, is different _________ than the one raised by Lui's case. In Terlinden, the _________ question was whether or not the Kingdom of Prussia continued to have an independent existence and whether its treaty obligations could be exercised in the name of its King -9- 9 notwithstanding the fact that he had subsequently acquired "the title of German Emperor." Id. at 284. The impending ___ reversion of sovereignty over Hong Kong does not raise this question. No one doubts -- and the government does not dispute -- that the Crown Colony of Hong Kong will cease to exist beyond reversion to China. If some doubt existed on this score, Terlinden counsels that the judicial department _________ would have to defer to the judgment of the political branches because the action of the political branches of government "must be regarded as of controlling importance" on the question of "whether [a] treaty has ever been terminated." 184 U.S. at 285. Lui's case frames an entirely different question. The extradition request from the Crown Colony of Hong Kong does not raise the issue of whether or not the US- UK extradition treaties have been terminated. Instead it raises the question of whether the requesting sovereign is "competent to try and to punish him." Id. at 289.  ___ In my view, the Supreme Court in Terlinden makes a _________ distinction between a state's "power . . . to carry out its treaty obligations" (a determination on which the judiciary must defer to the political branches), id. at 288, and a ___ state's "competen[ce] to try and to punish" a relator. Id. ___ at 289. The first issue goes to the question of whether a treaty partner -- and hence a treaty relationship -- still exists. On this issue, Terlinden informs us that courts must _________ -10- 10 defer to the determination of the political branches. See ___ id. at 285, 288. The second issue goes to the question of ___ whether a treaty partner is fulfilling the promises and obligations it has undertaken with the United States. See ___ id. at 289. The Court's discussion in the paragraphs ___ following its reference to sovereign competency makes clear that courts retain the authority and duty to ascertain that the treaty-established prerequisites to extraditability have been met in a particular case. The Court noted that no question existed in the case before it that the treaty- created preconditions for extradition had been met. As the Court explained,  If it be assumed in the case before us, and _________________ ___ the papers presented on the motion for a stay ____________________ advise us that such is the fact, that the _________________________________________ commissioner, on hearing, deemed the evidence sufficient to sustain the charges, and certified his findings and the testimony to the Secretary of State, and a warrant for the surrender of Terlinden on the proper ____________ requisition was duly issued, it cannot be _____________________________________________ successfully contended that the courts could _______________________________ properly intervene on the ground that the treaty under which both governments had _____________________________________________ proceeded, had terminated by reason of the __________________________ adoption of the constitution of the German Empire, notwithstanding the judgment of both governments to the contrary.  Id. at 289-90 (emphasis added). ___ Therefore, contrary to the panel opinion's suggestion, the district court correctly concluded that Terlinden _________ teaches that this court has jurisdiction to examine whether the Hong Kong extradition request fulfills the obligations undertaken -11- 11 by the United Kingdom under the treaty. See Lui, 1997 WL at *4. ___ ___ Unlike Terlinden, the relator in this case does not argue that _________ the extradition treaty under which he has been sought has been terminated because the requesting sovereign no longer exists. Instead Lui argues and the record reveals that the Crown Colony of Hong Kong, though it currently exists, will not try or punish him before reversion and thus does not meet the conditions imposed by Articles I and XII of the treaty and the Terlinden _________ requirement that an authority requesting a relator's extradition must be "competent to try and to punish him." 184 U.S. at 289.  As I read it, Article XII indicates that the United States and the United Kingdom undertook an agreement to extradite relators but only for trial and punishment in the courts and prisons of each other. Because it is conceded that the extradition request in this case will result in Lui's being tried and punished under the courts of another sovereign, my reading of Articles I and XII of the treaty convince me that the British Hong Kongese authorities fail to live up to the obligations undertaken by the United Kingdom. If Lui may be extradited at all pursuant to the bilateral US-UK extradition treaties, I read the relevant treaty provisions to say that this may occur only if the United Kingdom or authorities accountable to it retain exclusive jurisdiction over Lui's person following Hong Kong's reversion to China. Because the Crown Colony will surrender custody over Lui and jurisdiction over his criminal case to the -12- 12 Chinese successor regime, I am of the opinion that the extradition request in this peculiar set of circumstances constitutes a violation of the relevant treaty terms. As such, I believe that no certification of extraditability can issue from this court pursuant to the US-UK extradition treaty and 18 U.S.C. 3181, 3184. II. The Re-extradition Prohibition II. The Re-extradition Prohibition Lui's case also presents a difficult question with respect to whether the United Kingdom's surrender of sovereignty over Hong Kong to China in July 1997 would effect an impermissible re-extradition with respect to Lui under the terms of Article XII. For the reasons that follow, I believe it would. Article XII in relevant part provides that "[a] person extradited [to a requesting Party] shall not . . . be extradited by that Party to a third State." Here, upon reversion, the United Kingdom will surrender sovereignty and responsibility for the administration of justice in Hong Kong to China. In the event that Lui is extradited to Hong Kong prior to reversion, the record shows beyond question that he will be surrendered to the courts and judicial system of a third-party sovereign state for prosecution. The difficulty lies in determining whether reversion and Lui's surrender to the Chinese regime that will succeed the Crown Colony amounts to another extradition. -13- 13 The plain meaning and derivations of the words "extradite" and "extradition" help lead me to conclude that the surrender contemplated for Lui would constitute another extradition. The dictionary definition of "extradite" is, "To deliver up, as to another state or nation." Funk & Wagnalls New ___________________ Comprehensive International Dictionary of the English Language _________________________________________________________________ 450 (1978). "Extradition" is alternatively defined in dictionaries as, "The surrender of an accused person by a government to the justice of another government, or of a prisoner by one authority to another," id., as "the surrender of an ___ alleged fugitive from justice or criminal by one state, nation, or authority to another," The Random House Dictionary of the _____________________________________ English Language 685 (2d ed. 1987), and as, "The surrender or ________________ delivery of an alleged criminal usu[ually] under the provisions of a treaty or statute by one country, state, or other power to another having jurisdiction to try the charge." Webster's Third _______________ International Dictionary 806 (1986).6 ________________________ Legal usage has followed the word's plain meaning. Black's Law Dictionary defines "extradition" by closely paraphrasing the formula given in Terlinden, wherein the Supreme _________  ____________________ 6The derivation of the English word is from the French, Old French and ultimately Latin equivalents. Specifically, the English "extradition" stems from a Latin union of the prefix ex- [out] and traditio [a delivery or __ ________ surrender], the latter word flowing from traditus, the past ________ participle of tradere [to deliver], which, in turn, stems _______ from the conjunction of trans- [across] and dare [give]. See _____ ____ ___ Funk & Wagnalls New Comprehensive International Dictionary of _____________________________________________________________ the English Language 450, 1330 (1978). ____________________ -14- 14 Court defined "[e]xtradition" as "the surrender by one nation to _______________________________ another of an individual accused or convicted of an offence __________________________ outside its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." 184 U.S. at 289 (emphasis added); Black's Law Dictionary 526 (5th ed. 1979) (replacing the ______________________ word "nation" with "state or country"). International practice is consistent with this legal usage of the term. Prohibitions on re-extradition, like that found in Article XII, are fundamental features of "many [extradition] treaties" that are generally interpreted to give force to the broad principle of international law that "a person extradited to one state may not be extradited or otherwise _________________________ surrendered to a third state for prosecution." Restatement _________________________________________________ (Third) of Foreign Relations Law 477 cmt. d. The operative plain meaning of the word, its legal usage, international practice, and its etymological derivation all indicate that the surrender which the record shows and the government concedes is contemplated for Lui would constitute another extradition. Upon reversion, the United Kingdom will surrender sovereignty to China as well as surrender jurisdiction over and custody of criminal defendants like Lui. Using the Terlinden definition, on the peculiar circumstances in this case, _________ upon reversion: (1) Lui will be "surrender[ed] by one nation to another"; (2) he will be "an individual accused . . . of an -15- 15 offence outside [the extraditing authority's] own territory," because authority over that territory will pass from the United Kingdom to China; (3) the offenses for which Lui is accused "will be within the territorial jurisdiction" of the receiving authority, viz., China; and (4) the receiving authority, under ____ Sino-British international agreements, specifically the Joint Declaration regarding reversion, will be "competent to try and to punish him." 184 U.S. at 289. Having canvassed the relevant sources that help to illuminate the meaning of the word "extradition," I believe that the revealed reality that the Crown Colony will surrender custody over Lui and jurisdiction over his criminal case to the Chinese successor regime contemplates another extradition in violation of Article XII of the US-UK bilateral extradition treaty. A decision of the Ninth Circuit, on which the panel opinion in the instant case relies, reaches a contrary result. See Oen Yin-Choy ___ ____________ v. Robinson, 858 F.2d 1400, 1403-04 (9th Cir. 1988). Starting ________ from the premise that this case is not controlling in this court, this circuit should decline to follow this decision because I believe that its argument is neither thorough nor persuasive. Moreover, the Ninth Circuit was faced by a fact pattern quite unlike the heightened and unique circumstances present in Lui's case and thus was not required to squarely face the issue presented here. -16- 16 In Oen, the United States Attorney, acting on behalf ___ of the United Kingdom and the Crown Colony of Hong Kong, initiated extradition proceedings against Oen in April 1987, a full decade before the scheduled date of reversion. Id. at 1403. ___ Oen was charged with false accounting and publishing a false statement, extraditable offenses under Article III of the US-UK extradition treaty. Id. at 1405. Oen argued that if he was ___ extradited and convicted then the possibility existed that he would remain incarcerated beyond July 1, 1997, the date of reversion. He argued that this hypothetical scenario would have the effect of extraditing him to China in violation of Article XII of the treaty. Id. at 1403. ___ The Ninth Circuit disagreed and concluded that the Terlinden definition of "extradition" meant that "[n]either _________ deportation nor surrender other than in response to a demand pursuant to Treaty constitutes extradition." Id. at 1404. ___ Having thus rephrased the Terlinden definition, the Ninth Circuit _________ panel concluded that "even if Oen becomes subject to Chinese ________ authority pursuant to a reversion of sovereignty upon cession and termination of the British lease of Hong Kong, he will not have been extradited to China." Id. (emphasis added). ___ I find the Oen court's conclusion unsatisfactory for ___ three reasons. First, as my previous discussion elaborates, it does not follow from either the commonly settled meaning of the word "extradition" or the term's operative legal usage, as -17- 17 manifested by the Supreme Court's definition in Terlinden. _________ Instead it proceeds upon a rearticulated and truncated sense of the term that does not correspond to Terlinden and that cuts _________ against international practice and the meaning that the term and its French and Latin cognates have carried since Roman antiquity. Second, even on its own terms, the Oen court ___ misapplied the meaning of the word "extradition." Specifically, even if one accepts the Oen view that a surrender must be ___ effectuated in response to a demand pursuant to treaty in order for it to constitute an extradition, then a Hong Kong relator's post-reversion surrender would qualify. In view of the treaty architecture that surrounds the impending reversion and the provisions in the Joint Declaration that address the juridical and legal transfer of sovereignty, it is difficult to see how the Crown Colony will surrender custody over Lui and jurisdiction over his criminal case to the Chinese successor regime in the absence of the demands on his person qua criminal defendant that ___ owe their legal status solely to treaty. See, e.g., Sino-British ___ ____ Joint Declaration, para. 1 ("The Government of the People's Republic of China declares . . . that it has decided to resume the exercise of sovereignty over Hong Kong with effect from 1 July 1997.").7  ____________________ 7The surrender of sovereignty and Chinese demands on Hong Kongese criminal defendants upon reversion all flow from treaty provisions. The United Kingdom's sovereignty over Hong Kong stems from cessions of territory made in 1842 (pursuant to the Treaty of Nanking) and 1860 (pursuant to the -18- 18 Third, the factual pattern in Oen was radically ___ dissimilar to the one that the court faces in this case. In Oen, ___ the relator raised only a distant hypothetical possibility that he would remain incarcerated in Hong Kong prisons following reversion some ten or nine years later. No one doubted that Oen, upon extradition, would be tried and, if necessary, sentenced by courts of the British Crown Colony and imprisoned in Crown Colony gaols.  The Oen court thus did not address itself to the ___ situation in this case, where it is certain as a practical matter and conceded by the government that the relator's trial would not be under the courts of the British Crown Colony. Therefore, the Oen decision did not fully address the issue that squarely ___ confronts us today, whether Lui's surrender to Chinese authorities after reversion for trial will amount to another __________  ____________________ Convention of Peking) and a ninety-nine year lease contained in the Convention of Beijing, June 9, 1898. See Shawn B. ___ Jensen, International Agreements Between the United States __________________________________________________ and Hong Kong Under the United States-Hong Kong Policy Act, 7 __________________________________________________________ Temp. Int'l & Comp. L.J. 167, 168-69 (1993); see also 1 ___ ____ Treaties and Agreements with and Concerning China, 1894-1919, _________________________________________________ 130, No. 1898/11 (1921) (cited in Oen, 858 F.2d at 1403). ________ ___ Moreover, the three constitutive parts of Hong Kong -- Hong Kong proper (1842), Kowloon (1860), and the New Territories (1898) -- are scheduled to revert to China on July 1, 1997 pursuant to the Sino-British Joint Declaration which was signed on December 19, 1984 and entered into force on May 27, 1985. See Jensen, supra, at 170-73. That international ___ _____ agreement, by addressing the Chinese successor regime's executive, legislative, and judicial powers, provides for the transfer of jurisdiction over persons accused of criminal offenses and in custody in Hong Kong at the date of reversion. See Joint Declaration, para. 3(3).  ___ -19- 19 extradition. Read closely, Oen simply refuses to conclude that a ___ previously convicted, already incarcerated prisoner is extradited upon reversion. This is not the predicament with Lui. I thus believe that Oen is unpersuasive and not on point. ___ III.  III.  Legislative Intent, Judicial Deference, and Separation of Powers  Legislative Intent, Judicial Deference, and Separation of Powers  Lui's case also presents a difficult question with respect to whether certification of extradition in the circumstances known to the court and conceded by the government would comport with the legislature's intent in ratifying the US- UK extradition treaties. For the reasons the follow, I do not believe certifying Lui for extradition would accord with legislative intent. The legislative history surrounding the United States Senate's ratification of the supplementary treaty, which the district court ably canvassed, indicates that the Senate was concerned about the extent and degree to which it could trust the United Kingdom and its judicial system to be fair and just, ultimately concluding that the United Kingdom's courts were worthy of confidence. See 99th Cong., 2d Sess., 132 Cong. Rec. ___ 9119-71 (daily ed. July 16, 1986) (reprinting the Senate floor debate on ratification) (cited in Lui, 1997 WL at *6). In my _____ __ ___ view, to interpret the bilateral treaties between the United Kingdom and the United States so as to allow the benefits of such specially placed trust to be assumed by a non-signatory sovereign -20- 20 would fail to adhere to the Senate's intent. As the district court explained, "[i]t is clear beyond rational dispute that the Senate would not have ratified had there been any suggestion that the Treaty provisions could be extended, even by circumstance, to China." Lui, 1997 WL at *6.  ____ I reach this conclusion understanding full well that the United States signed an agreement on December 20, 1996 with the government of the fledgling Hong Kong Special Administrative Region ("HKSAR"), the British Crown Colony's successor, which provides for reciprocal post-reversion extradition. See ___ Agreement Between the Government of the United States of America and the Government of Hong Kong for the Surrender of Fugitive Offenders, Dec. 20, 1996. However, the new treaty constitutes a different bargain than the one voted upon by the Senate when it ratified the US-UK bilateral treaties. Moreover, the new agreement will not enter into force, if it indeed does so, until such time as the Senate, to which the new treaty was submitted on March 3, 1997, gives its advice and consent by a constitutionally required two-thirds vote. See U.S. Const. art. II, 2; 143 ___ Cong. Rec. S1846 (daily ed. Mar. 3, 1997).8  ____________________ 8In reaching this conclusion, I am mindful of the United States-Hong Kong Policy Act of 1992 (commonly known as the McConnell Act), codified at 22 U.S.C. 5701-5732. As commentators have explained, this congressional enactment "allows the United States to treat Hong Kong, where appropriate, as a separate entity from the PRC for purposes of U.S. domestic law." Christopher K. Costa, Comment, One ___ Country-Two Foreign Policies: United States Relations With __________________________________________________________ Hong Kong After July 1, 1997, 38 Vill. L. Rev. 825, 855 ____________________________ -21- 21 In my view, therefore, the recently signed US-HKSAR extradition treaty is itself highly probative of the proper interpretation that must be given to the existing bilateral extradition treaties between the United States and the United Kingdom under which Lui's extradition to Hong Kong is being sought. Put simply, these treaties do not survive the surrender of sovereignty to China and do not contemplate the surrender of relators to stand trial in courts under the sovereign aegis of China. See Janice M. Brabyn, Extradition and the Hong Kong ___ _______________________________ Special Administrative Region, 20 Case W. Res. J. Int'l L. 169, _____________________________ 173 (1988) ("Hong Kong's extradition relationships with other states ha[ve] always been exclusively vested in the British Crown. . . . Hong Kong's present extradition powers and relations are [thus] a direct consequence of, and are dependent upon, its colonial status. If nothing is done between now and 1997, both powers and relations will end when that colonial status ends."). In ratifying the US-UK bilateral extradition treaties, I believe the political branches have judged the  ____________________ (1993). Under the McConnell Act's provisions, "the areas in which separate treatment is appropriate are determined by the terms of the [Sino-British] Joint Declaration . . . . [which] grants Hong Kong a 'high degree of autonomy' in nine areas: economic policy, trade, finance, monetary policy, shipping, communications, tourism, culture and sport." Id. The ___ McConnell Act would not appear to have any direct bearing on this case, which involves foreign affairs and international law enforcement, because "[t]he Act does not establish a U.S. policy toward Hong Kong in the two areas reserved to PRC control by the Joint Declaration--defense and foreign affairs." Id. at 856; see also Jensen, supra note 7, at 180- ___ ___ ____ _____ 81. -22- 22 justice system of the United Kingdom and of the British Crown Colony of Hong Kong to be sufficiently fair to send accused persons there for trial. Until such time as the Senate ratifies the US-HKSAR extradition treaty no such similar expression of faith or trust has been made by the political branches with respect to China or to the Chinese successor to the British Crown Colony, which, if he is extradited, will try and punish Lui. The United States currently has no extradition treaty with China, which enjoys extradition relations with but one other country, Russia. Separation of powers principles and judicial self- restraint counsel that this court is not at liberty to interpret Article XII of the US-UK extradition treaty in such a way so as to yield a result for which the Senate did not bargain in ratifying the US-UK extradition treaty and which it is currently debating in the form of the recently submitted US-HKSAR agreement. See 143 Cong. Rec. S1846 (daily ed. Mar. 3, 1997).  ___ Of special import is the fact that the supplemental US-UK treaty was ratified by the Senate in 1986 at a time when it was fully aware of the widely publicized Sino-British Declaration regarding Hong Kong's reversion in 1997. The supplemental treaty nonetheless does not limit or otherwise circumscribe the terms of Article XII of the main treaty. As the panel's opinion explains, the supplemental treaty, as ratified by the Senate in 1986, "is entirely silent on the question of reversion." Slip op. at 11. Because Article XII, on my reading, allows only for extradition -23- 23 for offenses that can be tried and punished by the requesting sovereign, and because the supplemental treaty does not create any exception for reversion-affected relators like Lui, the treaty, as I read it and as the district court found, indicates that no right to demand extradition and no corresponding duty to surrender Lui exists where it is conceded that Lui will not be tried under courts of the United Kingdom or its dependent territories.  This silence in the face of Article XII's apparent requirement that relators are only to be tried by the judicial authorities of the two Contracting Parties is telling because the presumption in American and international law is against extraditability in the absence of any treaty-created right or obligation. Applicable Supreme Court precedent and "[t]he principles of international law recognize no right to extradition apart from treaty. While a government may, if agreeable to its own constitution and laws, voluntarily exercise the power to ___________ surrender a fugitive from justice to the country from which he has fled . . . the legal right to demand his extradition and the __________________________ _______ correlative duty to surrender him to the demanding country exist ______________________________ _____ only when created by treaty." Factor v. Laubenheimer, 290 U.S. ____________________________ ______ ____________ 276, 287 (1933) (emphasis added); see also 18 U.S.C. 3181, ___ ____ -24- 24 3184; Restatement (Third) of Foreign Relations Law 475 & cmt. a.9  Despite the foregoing, the panel opinion construes the US-UK treaties as requiring Lui's extradition to Hong Kong by invoking, inter alia, the principles that extradition treaties _____ ____ are to be construed liberally in favor of enforcement, see slip ___ op. at 15 (citing Laubenheimer, 290 U.S. at 298), and with great ____________ deference to executive branch interpretation. See id. at 14-15 ___ ___ (citing Laubenheimer, 290 U.S. at 295; Howard, 996 F.2d at 1330- ____________ ______ 31 & n.6).  ____________________ 9The United States recognizes only one statutory exception to this principle. Specifically, 18 U.S.C.  3181(b) permits "the surrender of persons, other than citizens, nationals, or permanent residents of the United States, who have committed crimes of violence against nationals of the United States in foreign countries without regard to the existence of any treaty of extradition" upon the fulfillment of certain criteria. The instant case involves allegations of economic crimes and thus does not implicate this recently and narrowly drawn exception to the generally operative principle of American and public international law.  As the quotation from Laubenheimer indicates, it ____________ should be understood that this opinion draws a distinction between voluntary extradition and extraditability as of right or obligation. "[I]t is now clear that apart from a treaty a state has no duty to deliver up a person who has sought asylum within its boundaries. If the state wishes, it can afford him a refuge and protection . . . . Of course, a state is under no duty to afford asylum to a fugitive; it may expel him from its territories if it choose, and without complaint from the individual who is expelled." United States ex rel. _____________________ Donnelly v. Mulligan, 74 F.2d 220, 222 (2d Cir. 1934). This ________ ________ distinction may appear academic in light of the government's expressed desire to extradite Lui in this case, but it is a distinction that is not without significance. -25- 25 These arguments, while worthy of consideration, ultimately fail to justify a result that does not correspond to the relevant treaty provisions in Articles I and XII or to the congressional intent reflected therein, viz., that the United ____ States agrees to extradite fugitives sought by authorities in the United Kingdom and its dependent territories to be prosecuted in the courts and under the law of those jurisdictions. I agree with the district court that a refusal to certify Lui for extradition requires no untoward judicial interference with prerogatives constitutionally entrusted in the executive branch of government. On the contrary, separation of powers principles and the prevention of undue encroachment upon the Senate's constitutional prerogatives counsel against certifying Lui for extradition under the peculiar circumstances present in his case. Specifically, I do not agree that refusing certification in Lui's case along the lines that the district court established implies any judicial arrogation of the executive's power over our affairs with foreign nations. Under the analysis ably laid out by the district court, the refusal to certify Lui's extraditability does not stem from any assessment or judgment about the fairness or trustworthiness of the Chinese judicial or penal systems, a determination that the third branch of government is not generally empowered or as qualified as the political branches to make. The district court correctly -26- 26 concluded that the certification question is an entirely legal one and that  it would not matter if China's legal system were more efficient and humane than either the United States' or the United Kingdom's. The bottom line is that the terms of the Treaty do not allow extradition when the requesting sovereign is unable to try and to punish the relator. [And t]he Crown Colony of Hong Kong will be unable to try and to punish Lui prior to reversion.  Lui, 1997 WL at *6. ___ I therefore cannot agree with an interpretation of the US-UK bilateral treaties that would permit circumstances to conspire so as to allow a relator to be extradited to Hong Kong where the practical reality is that China, a sovereign state with which the United States has no extradition treaty, will try and punish Lui. Neither can I agree with the panel opinion's conclusion that, because Lui's extradition is sought by the current Hong Kong regime, the right to demand extradition and the correlative duty to surrender him in fact do exist, regardless of what is conceded will transpire upon his arrival in Hong Kong.  The opinion correctly notes that "governments of our treaty partners often change, sometimes by ballot, sometimes by revolution or other means, and the possibility or even certainty of such change does not itself excuse compliance with the terms of the agreement embodied in the treaties between the countries." Slip op. at 3. But the instant case does not raise the question presented by a mere change in government, whether peacefully or -27- 27 violently accomplished. Instead it represents a situation in which sovereignty over a particular territory, Hong Kong, will ___________ revert from one sovereign, the United Kingdom, with whom the United States has signed and ratified an extradition treaty, to another sovereign, the People's Republic of China, with which the United States currently has no such treaty relationship. In my view, this court cannot fail to differentiate between a change in government, which ordinarily does not affect treaty-based obligations, and a change in sovereignty brought about when territory of one sovereign state is ceded and becomes part of the territory of another preexisting state, which generally terminates the effect of treaties of the predecessor state with respect to the territory in question. See Vienna ___ Convention on Succession of States in Respect of Treaties, art. 15, U.N. Doc. A/CONF. 80/31 (1978), 72 Am. J. Int'l L. 971 (1978).10   ____________________ 10Although the Convention on Succession presently lacks the requisite signatories for it to enter into force, and although the United States is not a signatory, the Convention is nonetheless viewed as an authoritative statement of the rule governing the succession of states under public international law. See Jensen, supra note 7, at 180-81 (citing Michael ___ _____ Akehurst, A Modern Introduction to International Law 159 (1987) __________________________________________ (noting that while the Convention on Succession "is not yet in force . . . many of its provisions codify the customary international law on the subject")). -28- 28 Whatever difficulties may arise in sorting out succession questions in other contexts,11 in this case it is clear -- and the executive branch does not question -- that Hong Kong will not succeed to the rights and obligations contained in the US-UK extradition treaties, as might have been the case had Hong Kong become an independent state in its own right rather than reverting to Chinese sovereignty. See, e.g., Brabyn, supra ___ ____ _____ at 174 ("For treaty-based relations, ex-colonies can often rely upon the general principles of treaty succession [to secure continuity in international legal relations]. . . . Hong Kong [however] is not moving from colonial status to independence. It is being restored to the sovereignty, or resuming its place as part, of the PRC. . . . [After reversion, existing international treaties involving Hong Kong] must be read as subject to incompatibility with the sovereignty of the PRC."). Accordingly, I believe that this court must recognize that the Crown Colony's present ability to fulfill the requirements imposed by the US-UK extradition treaties can only be assessed in light of the concession that the Crown Colony will not in fact try or punish him and with an eye to the fact that the Chinese successor regime in Hong Kong will not succeed to the Crown Colony's extradition rights and obligations. See id. ___ ___  ____________________ 11See generally D.P. O'Connell, State Succession in ___ _________ ___________________ Municipal Law and International Law (2 vols. 1967); D.P. ___________________________________ O'Connell, The Law of State Succession (1956); Louis Henkin et ___________________________ al., International Law 286 (3d ed. 1993); Restatement (Third) of _________________ Foreign Relations Law 208, Reporters' Note 1. -29- 29 Because of these facts, this court cannot certify Lui for extradition because the Crown Colony's extradition request fails to live up to the United Kingdom's promise, as I believe memorialized in the terms of the extradition treaties, to try all relators extradited from the United States in courts under its jurisdiction. Finally, I am unpersuaded by the panel's argument that refusing to certify Lui for extradition would be improper because it might mean that "any relator extradited from the United States to Hong Kong at any point since the signing of the Joint Declaration, was, if he faced a term of imprisonment upon conviction that could conceivably extend past the date of reversion, sent to Hong Kong in violation of the Treaty." Slip op. at 30. In the first place, as I explained earlier in discussing Oen, Lui's case raises a peculiar set of ___ circumstances. The record indicates and the government concedes that Lui will be both tried and, if convicted, punished under a judicial and penal system not under the jurisdiction of the United Kingdom. Second, I am not persuaded by the panel's argument that refusing to certify Lui might cast aspersions on the rectitude of other near-reversion extraditions and thus "make extradition to Hong Kong . . . the exception rather than the rule." Slip op. at 29 (quoting Oen, 858 F.2d at 1404). The ___ implication would appear to be that this cannot be what the -30- 30 Senate intended. In view of the legislative considerations and determinations that I have outlined above, I do not believe that this court can speculate that the unavailability of extradition to Hong Kong in the circumstances of this case fails to uphold the Senate's expressed concerns and legislated intent. The US-UK extradition treaties do not just implicate Hong Kong; they are comprehensive agreements that encompass the United Kingdom and all the territories dependent upon it.12 I cannot agree with the panel's implication that the district court's interpretation would have been a deal-breaker and the Senate would have refused to ratify the treaties if it had been told that their terms would be interpreted to prevent Lui's extradition in these circumstances. On the contrary, I believe that the district court was much nearer the mark when it concluded that "[i]t is clear beyond rational dispute that the Senate would not have ratified had there been any suggestion that the Treat[ies'] provisions could be extended, even by circumstance, to China." Lui, 1997 WL at *6. ___ To conclude, this court faces a situation that my research indicates has no truly analogous counterpart in the annals of modern international law. Because I do not believe that the panel's opinion reaches the correct result, and because I believe that the full court should hear and consider the  ____________________ 12See supra note 2. ___ _____ -31- 31 numerous difficult legal questions that this case raises, I would grant the petition for en banc review. For the foregoing reasons, I respectfully dissent from the denial of the petition. -32- 32